FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 22 2012

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

CARROLYN CAMPBELL, INDIVIDUALLY
& ON BEHALF OF OTHERS SIMILARLY SITUATED,

      **Plaintiff,**

v.

      Case No. _4:12-CV-176 DPM_

RELIANCE HEALTH CARE, INC.,
NORTHWEST HEALTH AND REHAB, INC.,
BRANDON ADAMS, and BRYAN ADAMS, individually
and in their capacity as owners, managers, officers, and/or
incorporators of RELIANCE HEALTH CARE, INC.,
and NORTHWEST HEALTH AND REHAB, INC.,

This case assigned to District Judge _Marshall_
and to Magistrate Judge _Young_

      **Defendants.**

---

## COLLECTIVE ACTION COMPLAINT

---

Comes now Plaintiff Carrolyn Campbell, individually and on behalf of others similarly situated, by and through her attorneys, Holleman & Associates, P.A., and Donati Law Firm, LLP, and brings this collective action complaint against Defendants Reliance Health Care, Inc., Northwest Health and Rehab, Inc., Brandon Adams, and Bryan Adams, individually and in their capacity as owners, managers, officers, and/or incorporators of Reliance Health Care, Inc., and Northwest Health and Rehab, Inc. (hereinafter "Defendants"), for violations of the Fair Labor Standards Act ("FLSA"). More specifically, this case is brought by Plaintiff, individually, and on behalf of all others similarly situated who, at any time during the past three years and up until the date of entry of judgment are or were employed by Defendants and whose pay was subject to an automatic meal break deduction even when those persons performed compensable work during such unpaid meal breaks. In support, Plaintiff states and alleges as follows:

## JURISDICTION

1.      Jurisdiction of this action is conferred on the Court by 29 U.S.C. §§ 216(b), 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a).  Venue lies within the district, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

2.      Plaintiff Carrolyn Campbell ("Ms. Campbell or Plaintiff") is a resident and citizen of the state of Arkansas.  Plaintiff was employed by Defendants as a Licensed Practical Nurse and Medical Records Director from on or about April 21, 2010 to February of 2012.

3.      At all relevant times herein, Plaintiff was paid by Defendants on an hourly basis and was classified as a nonexempt employee eligible to receive overtime compensation under the FLSA.

4.      As set forth below, while working for Defendants, Plaintiff was regularly required to perform compensable work during unpaid meal breaks.  Plaintiff consents to be a party to this collective action pursuant to 29 U.S.C. § 216(b).  **See Exhibit A.**

5.      Defendant Reliance Health Care, Inc. ("Reliance"), which is based in Conway, Arkansas, owns and operates nursing homes and rehabilitation facilities throughout the state of Arkansas.

6.      Defendant Reliance is the sole owner of Defendant Northwest Health and Rehab, Inc.

7.      Defendant Reliance creates and enforces company policies and makes decisions affecting the wages and hours of it employees, as well as the employees of its subsidiaries, including the employees of Defendant Northwest Health and Rehab, Inc.

8.     Defendant Reliance employed Plaintiff and others similarly situated at all relevant times herein.  The registered agent for Reliance is Brandon Adams, whose address is 824 Salem Road Suite 210, Conway, AR.

9.     Defendant Northwest Health and Rehab, which does business as North Hills Life Care & Rehab, ("Northwest") is a nursing home and rehab facility located in Fayetteville, Arkansas.

10.     Defendant Northwest is a wholly owned subsidiary of Defendant Reliance.

11.     Defendant Northwest employed Plaintiff and others similarly situated at all relevant times herein.  The registered agent for Northwest is Mike Millar, whose address is 401 W. Center, Searcy, AR 72143.

12.     Defendant Brandon Adams is and was the president and incorporator of Reliance, and is and was the president of Northwest.  Brandon Adams was the Plaintiff's employer for all relevant time periods.  For all of the similarly situated employee Plaintiffs, Brandon Adams is currently or was their employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

13.     Defendant Bryan Adams is and was the vice-president of Northwest.  Bryan Adams was the Plaintiff's employer for all relevant time periods.  For all of the similarly situated employee Plaintiffs, Bryan Adams is currently or was their employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

14.     The Plaintiff and those similarly situated seek an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and for compensation and other relief under the FLSA, as amended, 29 U.S.C. § 216(b).

15.     At all times material herein, the Plaintiff and those similarly situated have been entitled to the rights, protection and benefits provided under the FLSA, as amended, 29 U.S.C. § 201, *et seq*, and the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq*.

## FACTS

16.     This action is filed on behalf of all nonexempt employees of Defendants whose pay is subject to an automatic meal break deduction even when they perform compensable work during their meal breaks. These persons include, but are not limited to, secretaries, house-keepers, custodians, registered nurses, licensed practical nurses, administrative personnel, and others employed by Defendants during the three years preceding the filing of this action.

17.     Through the years, the U.S. Department of Labor, Wage and Hour Division, has discovered numerous FLSA violations during its investigation of health care industry employers such as Defendants.

18.     To provide guidance to employers such as Defendants who are covered under the FLSA, the DOL issued Fact Sheet #53 relating to the failure of health care industry employers to pay employees for all hours worked. **See Exhibit B.**

19.     As Fact Sheet #53 explains, under the FLSA, nonexempt employees must be paid for all hours worked in a workweek and in general, "hours worked" includes all time an employee must be on duty, on the employer's premises, or at any other prescribed place of work.

20.     Fact Sheet #53 also states that the failure to count all hours worked may result in an overtime violation where employers have not fully accounted for hours worked in excess of forty (40) hours during the workweek.

21.     As applied to the facts of this case, Fact Sheet #53 states that under the FLSA, bona-fide meal periods (typically thirty (30) minutes or more) are not work time, and an

employer does not have to pay for them.  The employees, however, must be completely relieved from duty during their meal breaks.  When choosing to automatically deduct thirty (30) minutes per shift, an employer must ensure that its employees are receiving the full meal break.

22.     In other words, even if an employer notifies an employee that it is the employee's responsibility to take a thirty (30) minute meal break each shift, then the employer is still responsible for ensuring that the employee actually takes the thirty (30) minute meal break without interruption.   If an employer knows or should know that a thirty (30) minute uninterrupted meal break is not taken, then the employer must count the interrupted thirty (30) minute meal break as time worked.

23.     As discussed in Fact Sheet #53, and like many health care industry employers, Defendants have instituted and maintain a companywide meal break deduction policy, which applies to all of Defendants' nonexempt employees.  Pursuant to this policy, Defendants' computerized/electronic timekeeping system automatically deducts thirty (30) minutes of time per work shift for each nonexempt employee as if the employee had been able to take a thirty (30) minute, uninterrupted meal break.

24.     But in violation of the FLSA, Plaintiff and others similarly situated often perform compensable work for Defendants during their meal breaks without receiving credit for the time worked.  This occurs because Defendants do not completely relieve Plaintiff and others similarly situated of their work duties and responsibilities during their meal breaks.

25.     In fact, Defendants do not prohibit Plaintiff and others similarly situated from working during their "meal breaks" and routinely suffers or permits Plaintiff and others similarly situated to perform such work.

26.    Although Defendants automatically deduct thirty (30) minutes per work shift, Defendants expect Plaintiff and others similarly situated to be available to work throughout their shifts and Defendants consistently require its employees to work during unpaid "meal breaks."

27.    Plaintiff and others similarly situated are expected by Defendants to eat without any relief by additional staff.

28.    Defendants know and/or should know that Plaintiff and others similarly situated routinely perform work during their unpaid meal breaks.

29.    Plaintiff and others similarly situated perform work for Defendants, in management's plain sight, and at management's request during their unpaid meal breaks.

30.    Defendants have observed Plaintiff and others similarly situated working through their unpaid meal breaks and Defendants have directed Plaintiff and others similarly situated to work during their unpaid meal breaks.

31.    Given the demands of the health care industry and staffing shortages, Defendants know that to get the tasks done that it assigns to Plaintiff and others similarly situated, Plaintiff and others similarly situated have to work through their unpaid meal breaks.

32.    Under Defendants' meal break deduction policy, Defendants improperly and illegally shift the burden to Plaintiff and others similarly situated to ensure that non-qualifying meal breaks are not deducted from their pay.

33.    Even though Defendants know that Plaintiff and others similarly situated are working during meal breaks, Defendants fail to compensate Plaintiff and others similarly situated for their work, electing instead to sit back and accept the benefits of uncompensated work.

34.    Some evidence generally reflecting the number of uncompensated hours worked by each class member and the compensation rates for the relevant work periods is in the

possession of Defendants. While Plaintiff is unable to state at this time the exact amount owing to Plaintiff and others similarly situated, Plaintiff proposes to obtain such information by appropriate and focused discovery proceedings to be taken promptly in this action, and request that damages or restitution be awarded according to proof thus obtained and presented to the Court.

## COLLECTIVE ACTION ALLEGATIONS

35.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

36.     Plaintiff brings this FLSA collective action on behalf of Plaintiff and all others similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, as follows:

> All persons employed within the three years preceding the filing of this action by Defendants, whose pay was subject to an automatic thirty (30) minute meal break deduction even when they performed compensable work during the unpaid meal break.

Upon information and belief, Plaintiff believes that the definition of the class may be further refined following discovery of Defendants' books and records.

37.     There are questions of law and fact common to Plaintiff and others similarly situated, which predominate over any questions affecting individual members only. These factual and legal questions include:

> a.      Whether Plaintiff and others similarly situated were expected to and/or mandated to regularly work during unpaid meal breaks;

> b.      Whether Defendants failed to pay Plaintiff and others similarly situated for all hours that they worked because of the fact that they automatically deducted thirty (30) minute meal periods despite the fact that Plaintiff and others similarly situated regularly performed compensable work during "meal breaks";

c.      Whether Defendants failed to pay Plaintiff and others similarly situated all overtime compensation due to them by virtue of their meal break deduction policy;

d.      The correct statute of limitations for the claims of Plaintiff and others similarly situated;

e.      The correct method of calculating back overtime pay;

f.      Whether Plaintiff and others similarly situated entitled to compensatory damages, and if so, the means of measuring such damages;

g.      Whether Defendants are liable for pre-judgment interest; and,

h.      Whether Defendants are liable for attorney's fees and costs.

38.     Defendants have acted and refused to act on grounds generally applicable to Plaintiff and others similarly situated.

39.     The claims of Plaintiff are typical of the claims of the class in that Plaintiff was denied overtime wages as a result of Defendants' uniform policy of not compensating its non-exempt employees for all hours worked. This is the predominant issue which pertains to the claims of Plaintiff and others similarly situated.

40.     The collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.

41.     Plaintiff will fairly and adequately protect the interests of the class, as her interests are in complete alignment with others similarly situated, i.e., to prove and then eradicate Defendants' illegal practice of not paying overtime wages to their non-exempt employees.

42.     Counsel for Plaintiff will adequately protect the interests of Plaintiff and others similarly situated and is experienced with class/collective litigation and has previously served as class counsel in FLSA litigation.

43.     Plaintiff and the class Plaintiff represents have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' p ay practices.

44.     Defendants have engaged in a continuing violation of the FLSA.

45.     Plaintiff, as well as all others similarly situated, were denied overtime wages as a result of Defendants' pay practices. This violation was intended by Defendants and was willfully done.

46.     Defendants' action in denying overtime wages to Plaintiff was intentional and constitutes a willful violation of the FLSA.

## FLSA OVERTIME VIOLATION

47.     The allegations set forth in the preceding paragraphs are incorporated herein.

48.     At all relevant times, Defendants have been an employer engaged in interstate commerce.  At all relevant times, Defendants employed Plaintiff and each member of the collective action class consistent with the terms of the FLSA.

49.     At all relevant times, Defendants have had annual gross revenues in excess of $500,000.00.

50.     As a consequence of Defendants' employment practices whereby it automatically deducts thirty (30) minutes for meal breaks from the pay of hourly, non-exempt employees, Plaintiff and others similarly situated were denied statutory overtime wages as required by the FLSA.

51.     Plaintiff and others similarly situated are or were employees of Defendants within the meaning of the FLSA and, as such, were entitled to the benefits of the FLSA's overtime wage requirements.

## VIOLATIONS OF THE ARKANSAS MINIMUM WAGE ACT

52.     The allegations set forth in the preceding paragraphs are incorporated herein.

53.     At all relevant times, Defendants have been Plaintiff's "employer" within the meaning of Ark. Code Ann. § 11-4-203(4).

54.     At all relevant times, Plaintiff has been Defendants' "employee" within the meaning of Ark. Code Ann. § 11-4-203(3), without exemption or exception.

55.     Ark. Code Ann. § 11-4-211(a) states as follows:

> Except as otherwise provided in this section and §§ 11-4-210 and 11-4-212, no employer shall employ any of his or her employees for a work week longer than forty (40) hours unless the employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half (1 1/2) times the regular rate of pay at which he or she is employed.

56.     Plaintiff is entitled to compensation for all hours worked in excess of 40 per week at a rate not less than one and one-half (1 1/2) times her regular rate of pay.

57.     At all relevant times, Defendants, pursuant to its policies and practices, failed and refused to compensate Plaintiff for work performed at the rate required by Ark. Code Ann. § 11-4-211.

58.     Defendants violated and continue to violate the Arkansas State law by failing to pay Plaintiff for all hours actually worked at the rate prescribed therein.

59.     Plaintiff has sustained substantial damages as a result of the Defendants' violations of the Arkansas State law.

60.     Defendants' violations entitle Plaintiff to liquidated damages pursuant to Ark. Code Ann. § 11-4-218(a)(2) in the form of double the compensatory damages set forth in Ark. Code Ann. § 11-4-218(a)(1)(B)(i).

61.     Plaintiff is entitled to an award of attorneys' fees and court costs pursuant to Ark. Code Ann. § 11-4-218(a)(1)(B)(ii).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and all others similarly situated who join in this action demand:

1. Issuance of notice as soon as possible to all persons who were employed by Defendants on a nonexempt basis during any portion of the three years immediately preceding the filing of this action. Generally, this notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit if they were not paid the proper overtime compensation for their hours worked in any week during the statutory period;

2. Designation of this action as a collective action on behalf of the FLSA collective class pursuant to 29 U.S.C. § 216(b);

3. Judgment against Defendants for an amount equal to the unpaid back wages of Plaintiff and others similarly situated at the applicable overtime rates;

4. Judgment against Defendants that their violations of the FLSA were willful;

5. An equal amount to the overtime damages as liquidated damages;

6. All recoverable costs, expenses, and attorney's fees incurred in prosecuting these claims;

7. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

8. Leave to amend to add claims under applicable state and federal laws, including claims for minimum wages pursuant to 29 U.S.C. § 206;

9. Leave to amend to add other defendants who meet the definition of "employer" as defined at 29 U.S.C. § 203(d);

    10.   An order requiring Defendants to preserve all electronically stored information relevant to this lawsuit, and

    11.     For all such further relief as the Court deems just and equitable.

                                       Respectfully submitted,

                                       *Maryna Jackson*

                                    Maryna O. Jackson – AR Bar #2009111
                                    maryna@johnholleman.net
                                    John T. Holleman – AR Bar #91056
                                    jholleman@johnholleman.net
                                    Amber R. Schubert – AR Bar #2009150
                                    amber@johnhollema.net

                                    HOLLEMAN & ASSOCIATES, P.A.
                                    200 West Capitol Avenue, Suite 1620
                                    Little Rock, AR 72201
                                    Tel. 501.975.5040
                                    Fax 501.975.5041

                                    &

                                  William B. Ryan - TN Bar #20268
                                    billy@donatilawfirm.com
                                    Bryce W. Ashby - TN Bar #26179
                                    bryce@donatilawfirm.com
                                    DONATI LAW FIRM, LLP
                                    1545 Union Avenue
                                    Memphis, TN 38104
                                    Tel. 901.278.1004
                                    Fax 901.278.3111

## PLAINTIFF CONSENT FORM

I, Carrolyn Campbell, hereby consent to join the action against RELIANCE HEALTH

CARE, INC., NORTHWEST HEALTH AND REHAB, INC., BRANDON ADAMS, and BRYAN

ADAMS, individually and in their capacity as owners, managers, officers, and/or incorporators of

RELIANCE HEALTH CARE, INC. and NORTHWEST HEALTH AND REHAB, INC. (hereinafter

"Defendants"), as a Plaintiff to assert claims for overtime pay.  If this case does not proceed

collectively, I also consent to join any subsequent action to assert claims against Defendants for

overtime pay.  During the past three years, there were occasions when I worked over 40 hours per

week while employed by Defendants.  As an employee/former employee of Defendants, I consent

to becoming a party Plaintiff to this lawsuit, to be represented by HOLLEMAN & ASSOCIATES,

P.A. and DONATI LAW FIRM, LLP and to be bound by any settlement of this action or

adjudication of the Court.  Consented to on this _21_ day of _March_ , 2012.

Carrolyn Campbell
Carrolyn Campbell



**U.S. Department of Labor**
Wage and Hour Division



U.S. Wage and Hour Division
(Revised July 2009)

# Fact Sheet #53 – The Health Care Industry and Hours Worked

The Fair Labor Standards Act (FLSA) requires covered employers to pay non exempt employees at least the federal minimum wage of $7.25 per hour effective July 24, 2009, for all hours worked and overtime pay for for hours worked over 40 in a workweek. The FLSA is administered by the Wage and Hour Division of the U.S. Department of Labor.

Hospitals and other institutions "primarily engaged in the care of the sick, the aged, or the mentally ill" are covered employers under Section 3(s)(1)(B) of the FLSA. Thus, hospitals, residential care establishments, skilled nursing facilities, nursing facilities, assisted living facilities, residential care facilities and intermediate care facilities for mental retardation and developmentally disabled must comply with the minimum wage, overtime and youth employment requirements of the FLSA.

## Summary

This fact sheet provides guidance regarding common FLSA violations found by the Wage and Hour Division during investigations in the health care industry relating to the failure to pay employees for all hours worked. Nonexempt employees must be paid for all hours worked in a workweek. In general, "hours worked" includes all time an employee must be on duty, on the employer premises, or at any other prescribed place of work. Also included is any additional time the employee is "suffered or permitted" to work. The FLSA requires employers to pay for hours actually worked, but there is no requirement for payment of holidays, vacation, sick or personal time.

The failure to properly count and pay for all hours that an employee works may result in a minimum wage violation if the employee's hourly rate falls below the required federal minimum wage when his or her total compensation is divided by all hours worked. More likely, the failure to count all hours worked will result in an overtime violation because employers have not fully accounted for hours worked in excess of 40 during the workweek.

## Rounding Hours Worked

Some employers track employee hours worked in 15 minute increments, and the FLSA allows an employer to round employee time to the nearest quarter hour. However, an employer may violate the FLSA minimum wage and overtime pay requirements if the employer always rounds down. Employee time from 1 to 7 minutes may be rounded down, and thus not counted as hours worked, but employee time from 8 to 14 minutes must be rounded up and counted as a quarter hour of work time. See Regulations 29 CFR 785.48(b).

> *Example #1:*
> An intermediate care facility docks employees by a full quarter hour (15 minutes) when they start work more than seven minutes after the start of their scheduled shift. Does this practice comply with the FLSA requirements? Yes, as long as the employees' time is rounded up a full quarter hour when the employee starts working from 8 to 14 minutes before their shift or if the employee works from 8 to 14 minutes beyond the scheduled end of their shift.

> *Example #2:*

EXHIBIT

B

An employee's schedule is 7 a.m. to 3:30 p.m. with a thirty minute unpaid lunch break. The employee receives <u>overtime</u> compensation after 40 hours in a workweek. The employee clocks in 10 minutes early every day and clocks out 7 minutes late each day. The employer follows the standard rounding rules. Is the employee entitled to <u>overtime</u> compensation? Yes. If the employer rounds back a quarter hour each morning to 6:45 a.m. and rounds back each evening to 3:30 p.m., the employee will show a total of 41.25 hours worked during that workweek. The employee will be entitled to additional <u>overtime</u> compensation for the 1.25 hours over 40.

*Example #3:*
An employer only records and pays for time if employees work in full 15 minute increments. An employee paid $10 per hour is scheduled to work 8 hours a day Monday through Friday, for a total of 40 hours a week. The employee always clocks out 12 minutes after the end of her shift. The employee is paid $400 per week. Does this comply with the FLSA? No, the employer has violated the overtime requirements. The employee worked an hour each week (12 minutes times 5) that was not compensated. The employer has not violated the <u>minimum wage</u> requirement because the employee was paid $9.75 per hour ($400 divided by 41 hours). However, the employer owes the employee for one hour of overtime each week.

## Travel Time

Time spent by an employee in travel as part of his principal activity, such as travel from jobsite to jobsite during the workday, must be considered as hours worked. An employee who travels from home before the regular workday and returns home at the end of the workday is engaged in ordinary home-to-work travel. This is not considered hours worked. <u>See Regulations 29 CFR 785.33</u>.

*Example #4:*
A licensed practical nurse (LPN) works at an assisted living facility which has a "sister facility" 20 miles away. There have been times that the LPN has been asked to fill in for someone at the other facility after she completes her shift at her normal work site. It takes her 30 minutes to drive to the other facility. The travel time is not recorded on her time sheet. Is this a violation of the FLSA? Yes. The travel time must be considered part of the hours worked.

## Training and Seminars

Attendance at lectures, meetings, training programs and similar activities are viewed as working time ***unless all of the following criteria are met***:

- Attendance is outside of the employee's regular working hours;
- Attendance is in fact voluntary;
- The course, lecture, or meeting is not directly related to the employee's job; and
- The employee does not perform any productive work during such attendance.

<u>See Regulations 29 CFR 785.27</u>.

*Example #5:*
A residential care facility offers specialized training on caring for Alzheimer residents. There are two workshops: one in the evening for the day shift and one during the day for the evening shift. All employees are required to attend. Is this compensable time? Yes, because the training is not voluntary and is related to the employees' jobs.

*Example #6:*
The administrator of a nursing home says specialized patient care training is voluntary, but the nursing supervisors expect all employees on their units to attend and schedule times for each employee to go. Is the time considered hours worked? Yes, the time would be considered hours worked. When the nursing supervisors expect all unit employees to attend and schedule their times, it is not truly voluntary.

*Example #7:*
The dishwasher decides to go to the Alzheimer's training session after his shift. Must the administrator pay for the dishwasher's time spent at the training session? No, because all four criteria above are met. It is not considered hours worked.

*Example #8:*
The administrator provides a Tai Chi course to residents and allows employees to attend during their off-duty hours. Do employees have to be paid for the time they attend this course? No, the employees do not have to be paid because attendance is voluntary and the other three criteria are met.

## Meal Breaks

Bona-fide meal periods (typically 30 minutes or more) are not work time, and an employer does not have to pay for them. However, the employees must be completely relieved from duty. When choosing to automatically deduct 30-minutes per shift, the employer must ensure that the employees are receiving the full meal break. See Regulations 29 CFR 785.19.

*Example #9:*
A skilled nursing facility automatically deducts one-half hour for meal breaks each shift. Upon hiring, the employer notifies employees of the policy and of their responsibility to take a meal break. Does this practice comply with the FLSA? Yes, but the employer is still responsible for ensuring that the employees take the 30-minute meal break without interruption.

*Example #10:*
An hourly paid registered nurse works at a nursing home which allows a 30-minute meal break. Residents frequently interrupt her meal break with requests for assistance. Must she be paid for these frequently interrupted meal breaks? Yes, if employees' meals are interrupted to the extent that meal period is predominately for the benefit of the employer, the employees should be paid for the full 30-minutes.

## Other Breaks

Rest periods of short duration, generally running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as work time. It is immaterial with respect to compensability of such breaks whether the employee drinks coffee, smokes, goes to the rest room, etc. See Regulations 29 CFR 785.18.

*Example #11:* Many third shift nursing home employees who smoke prefer to take three ten-minute unpaid smoke breaks instead of their 30-minute unpaid meal break. Is it okay for them to substitute the smoke breaks for their meal break? No, the employee must be compensated for the smoke breaks.

**On-Call Time** An employee who is required to remain on call on the employer's premises or so close to the premises that the employee cannot use the time effectively for his or her own purpose is considered working while on-call. An employee who is required to carry a cell phone, or a beeper, or who is allowed to leave a

message where he or she can be reached is not working (in most cases) while on-call. Additional constraints on the employee's freedom could require this time to be compensated. See Regulations 29 CFR 785.17.

> *Example #12:* An assisted living facility has four LPN wellness coordinators who are paid hourly. They rotate being on-call each week. They are required to carry a cell phone and be within 45 minutes of the facility when they are on-call. They are not paid for all time spent carrying the cell phone but are paid for time spent responding to calls and time when they have returned to work at the assisted living facility. Does this comply with the FLSA? Yes.

## Unauthorized Hours Worked

Employees must be paid for work "suffered or permitted" by the employer even if the employer does not specifically authorize the work. If the employer knows or has reason to believe that the employee is continuing to work, the time is considered hours worked. See Regulation 29 CFR 785.11.

> *Example #13:*
> A residential care facility pays its nurses an hourly rate. Sometimes the residential care facility is short staffed and the nurses stay beyond their scheduled shift to work on patients' charts. This results in the nurses working overtime. The director of nursing knows additional time is being worked, but believes no overtime is due because the nurses did not obtain prior authorization to work the additional hours as required by company policy. Is this correct? No. The nurses must be paid time-and-one-half for all FLSA overtime hours worked.

> *Example #14:*
An hourly paid office clerk is working on a skilled nursing home's quarterly budget reports. Rather than stay late in the office, she takes work home and finishes the work in the evening. She does not record the hours she works at home. The office manager knows the clerk is working at home, but since she does not ask for pay, assumes she is doing it "on her own." Should the clerk's time working at home be counted? Yes. The clerk was "suffered and permitted" to work, so her time must be considered hours worked even thought she worked at home and the time was unscheduled. See Regulations 29 CFR 785.12.

## Where to Obtain Additional Information

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

The FLSA statute appears at 29 U.S.C. § 201 et seq. The federal regulations regarding hours worked appear in 29 C.F.R. Part 785.

When the state laws differ from the federal FLSA an employer must comply with the higher standard. Links to your state labor department can be found at www.dol.gov/whd/contacts/state_of.htm.

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USWAGE**
TTY: 1-866-487-9243
**Contact Us**